## A TRIANGLE OF RESPONSIBILITY FOR AN UNUSUAL ACCIDENT.

Circuit Court of Lucas County.

ALVIN M. WOOLSON v. JOSEPH HESSLING, THE TOLEDO PAPER BOX COMPANY AND THE MONARCH CANDY COMPANY.

Decided, 1904.

*Negligence—Package Drops from the Window of the Elevator When at the Fourth Floor—And Badly Injures a Drayman Standing at Entrance to Building—Elevator Operator Employed by Tenants of the Building Who Deducted His Wages from Their Rent—Negligence Charged Both in the Construction of the Building and in Its Operation—Determination as to How Liability Should be Fixed.*

W was the owner of a four-story brick factory building, the entire fourth floor of which was leased to a box company and parts of other floors to a candy company. The building was supplied with a freight elevator, which was operated by a man employed jointly by the several tenants, who respectively deducted his wages from the amount of rent due from them each month. The tenant on the fourth floor had some bundles of paper carted to the building, a number of which were placed on a hand truck by the elevatorman who ran the load on the elevator and raised it to the fourth floor, where the truck was made to tilt by one of the wheels running off the elevator, and a bundle of paper slid off the truck and through the window opening into the elevator shaft, and in falling to the street below struck and seriously injured the drayman who had brought the paper to the building. *Held:*

1. That the candy company was not responsible for the condition of the elevator, which made it possible for one wheel of the truck to run off and cause the load to tilt; or for the open window; or for the alleged negligence of the elevator man, since at the time of the accident he was not employed in its service.

2. That the owner of the building was responsible for the condition of the elevator and elevator shaft, but not for the alleged negligence of the elevator man.

3. That the tenant of the fourth floor, to which the load was being taken, was responsible for any negligence of the elevator man in making use of the elevator in a manner and under conditions which should have been known to him to be unsafe.

4. The determination as to what in the negligent chain of causation was the proximate cause of the accident should be left to the jury,

under instructions which relieve the owner of the building from liability for any independent cause of the accident which could not reasonably have been anticipated.

Parker, J.; Hull, J., and Haynes, J., concur.

This proceeding is brought to obtain a reversal of judgments of the court of common pleas in this case. The action in the court below was by Hessling against Woolson, the Toledo Paper Box Company and the Monarch Candy Company, on account of alleged negligence on the part of these defendants resulting in an injury to the plaintiff. The trial resulted in favor of the Monarch Candy Company directed by the trial judge, a verdict in favor of the paper box company upon a submission of the issues to the jury, and a verdict by the same jury in favor of Hessling for the sum of $2,000 against Woolson. Motions for new trials were made by both of the defeated parties. Woolson proceeds here as plaintiff in error, to obtain a reversal of the judgment against him; and Hessling, by a cross-petition in error, asks for a reversal of the judgment in favor of the Toledo Paper Box Company and the Monarch Candy Company. For a statement of the facts and the issues as presented by the pleadings, I shall adopt, in a large measure, an abstract of the pleadings found in one of the briefs of counsel.

It is alleged in the petition that for some time prior to and upon May 22d, 1902, the defendant, Alvin M. Woolson, was the owner of a four-story and basement brick building, known as the Berlin Block, situated at the northwesterly corner of St. Clair street and Jackson avenue in the city of Toledo; that on said date, and for some time prior thereto, the defendants, the Toledo Paper Box Company and the Monarch Candy Company each corporations of the state of Ohio, were, and for some time past had been renting separate parts of said building from the defendant Woolson; that the Toledo Paper Box Company, for the purposes of its business, occupied the entire fourth floor of the building, and the Monarch Candy Company, for the purposes of its business, occupied a portion of the basement and a portion of each of the first, second and third floors thereof.

When the box company and the candy company each took possession of the premises occupied by them respectively, there was at the rear of the building an elevator shaft about six feet square, which extended from the basement forming the westerly or outer side of the elevator shaft, a window being constructed in this wall at each floor. In the elevator shaft there was a freight elevator, provided with a platform or floor about six feet square, and this elevator was equipped for the use of certain of the tenants of the building, subject to terms and conditions hereinafter considered, for elevating and lowering goods, wares and merchandise up and down the elevator shaft to and from the several floors of the building in the conduct of the business of said tenants, respectively.

On May 22, 1902, the Toledo Paper Box Company employed the Moreton Truck & Storage Company to haul certain bales of paper belonging to the box company to the elevator shaft in the rear of the Berlin Block, where same was to be unloaded.

Joseph Hessling, the plaintiff, was then in the employ of the truck company, as a drayman, and at the direction of the manager of the truck company, about 9:30 A. M. drove a dray loaded with this paper to the entrance of the elevator shaft at the rear of said building and at the direction of the box company was there engaged in unloading the paper from the dray onto the ground.

In the amended petition, it is alleged by plaintiff, that whilst he was so engaged, one Henry K. Strayer, who was operating the elevator, loaded a truck with paper, in the rear of the building, drew it onto the elevator and elevated same to the fourth floor, and that while said Strayer was unloading the truck off of said elevator onto the fourth floor of the building, he carelessly caused some of the wheels of the truck to run into an opening adjacent to the elevator platform between the elevator platform and the westerly wall of the building, thereby causing the truck to partially overturn and a portion of said paper, loaded on the truck, to fall out of the window of the building located in said elevator shaft above the fourth floor striking plaintiff on the shoulder, and fracturing his arm and otherwise injuring him.

It is further alleged that the box company and the candy company, as tenants of Woolson, were each in the possession and control of, and had access to and the right to use said elevator in raising and lowering their goods, wares and merchandise to the respective parts of the building, so used and occupied by them by virtue of their said contract of lease with said defendant Woolson.

On May 22d, 1902, said elevator was operated and controlled by one Henry K. Strayer, who was the joint employee of the candy company and Woolson. It was the duty of Strayer to load all the goods, etc., of the candy company and the goods, etc., of all other tenants of said Woolson, except the box company, upon the elevator, for the purposes of taking the same into and out of the building, as said company and said tenants might direct. Prior to and on May 22d, 1902, it was mutually agreed between the candy company, Woolson and the box company that the candy company and Woolson would elevate and lower on said elevator to and from the fourth floor, above the basement of the building (the premises of the box company) all goods, etc., that the box company might desire to take into or deliver from its said premises, for a consideration paid, or to be paid by the box company to the candy company and Woolson. Strayer was directed by the candy company and Woolson to elevate and lower, by means of said elevator, all goods, wares and merchandise that the box company might desire to take in or out of said building; and on May 22d, said Strayer was in the performance of said duties so assigned him by the candy company and Woolson.

On said day said Strayer was in the employ of the candy company and Woolson in loading paper upon a four wheeled truck in the rear of said building at the entrance of said elevator shaft at the basement floor thereof; hauling said elevator truck on said elevator, elevating the same to the fourth floor of said building, and unloading the same.

In the amended petition plaintiff further alleges that the elevator shaft was carelessly and negligently constructed and maintained by Woolson, and was carelessly and negligently permitted

to be kept, maintained and operated by the candy company and the box company in that said shaft was erected vertically and against the westerly wall of the building at its base; that this wall diminished in thickness at the upper floors of the building (the outer line of said wall being vertical) and at the fourth floor of said building said elevator was separated from said wall by a space of about eighteen inches, which extended the entire width of the elevator; that on the day of the accident to Strayer this opening was and for some time prior thereto had been unguarded. That between each floor of the building in said elevator shaft Woolson had constructed a window to furnish light to said shaft, but that he carelessly and negligently failed to construct anything to keep the loads upon said elevator from rolling off the floor there and falling through said windows to the ground beneath upon employees loading and unloading goods upon and to be taken from said elevator.

It is further alleged that Woolson, in so constructing said building, elevator shaft and elevator, and each of said defendants thereafter had cause to know, and did know that the elevator was so constructed as to render its use and operation dangerous to persons working outside of the building, at the base of said elevator shaft, and that in turning and hauling loaded trucks off of said elevator the same was liable to run off of said elevator into said opening between the floor of the elevator and to the outer wall, overturning the truck and throwing the load through the opening and through the windows to the ground below. That said elevator, elevator wall and buildings were in said condition when said several parts of said premises were leased by Woolson to the box company and the candy company and that the defendants have negligently permitted same to remain in said condition ever since they became such tenants.

In the amended petition it is further alleged that the plaintiff was not aware of the condition of the building, elevator shaft and elevator, and had no means of knowing the same, and that in unloading the paper he was exercising due care for his own safety. Plaintiff prays for damages in the sum of $15,000.

The defendant, Alvin M. Woolson, in his answer, admits that
on May 22d, 1902, the box company and the candy company
were his tenants and, under separate leases, occupied different
portions of the Berlin Block; that subject to the terms and con-
ditions hereinafter set forth, and not otherwise, each of said
defendants separately had access to and the right separately,
to use said elevator in raising and lowering goods, wares and
merchandise to and from the respective parts of said building,
separately used and occupied by them.

The defendant, Woolson, admits that on May 22d, 1902, said
elevator was operated and controlled by Henry K. Strayer, and
alleges that when not engaged about the business of the box com-
pany, it was the duty of said Strayer to load the goods of the
candy company upon said elevator for the purpose of taking the
same into and out of said building, as the candy company might
direct, and that when not so engaged, it was the duty of Strayer
to load the goods of the box company upon said elevator for the
purpose of taking same into and out of said building, as the box
company might direct.   That on May 22d, 1902, solely at the
direction of, and for, and when engaged only about the business
of the box company, Strayer was loading paper belonging to the
box·company upon a truck owned by the box company at the
rear of the building, near the entrance to the elevator shaft,
at the basement floor thereof, hauling said truck on the elevator,
elevating the same to the fourth floor of the building, occupied
and controlled entirely by the box company, and there unload-
ing the same.

The defendant Woolson, further alleges that on said date
plaintiff was employed as a drayman by the truck company; that
this company was employed by the box company to haul cer-
tain paper belonging to it to said elevator shaft; that during
the forenoon of said day plaintiff drove a dray, loaded with
paper, the property of the box company, to the rear of said
premises, and at a place where directed by the box company, un-
loaded said paper from the dray to the ground; that on said
day, plaintiff was in some way, wholly unknown to defendant
Woolson, injured by reason of a portion of the paper falling

upon and striking him; but alleges that he does not know and has not the means of knowing the nature and extent of said injuries. He admits that said elevator shaft was erected vertically and against the westerly wall of said building; that this wall diminishes in thickness at the upper floors, and that between each floor of said building in said elevator shaft or well, a window is constructed, which furnishes light to the elevator shaft. He further alleges that for some time prior to and upon May 22d, 1902, the box company was the sole occupant of the entire fourth floor of the Berlin Block, and was in the entire possession and control of said elevator and said elevator shaft, and that at said time Henry K. Strayer was engaged only in the employ and business of the box company. That for a long time prior to and upon said date, the defendant, Woolson, was not in the possession, use or control of the fourth floor of the building, or of the elevator shaft, or of the elevator therein, and did not operate or in any wise control the operation of said premises, or furnish power for or in any wise operate or control said elevator.

The defendant, Woolson, further says that the box company occupied the fourth floor of said building, and used said elevator shaft and the elevator therein, under an agreement with said Woolson whereby it was provided that the box company should entirely, at its own expense, furnish all the power and service required to run and control said elevator during the time said elevator was in actual use by it, with the right to so operate and use said elevator at all reasonable times for its purposes and business.

The defendant, Woolson, further alleges that said building, said elevator shaft, and the elevator therein, were all constructed prior to May 22d, 1902; that when the box company and the candy company severally took possession of the portions of the building leased by them, and severally acquired the right to use said elevator shaft, and the elevator therein, said elevator shaft was suitably enclosed, and all the windows were provided with all proper and necessary sashes and appliances requisite to prevent merchandise or other articles from falling through said windows; that the elevator was provided with all suitable, neces-

sary and proper fittings and appliances, so as to fully equip same for use by said defendants, and that said elevator and said fittings and appliances were, at all times thereafter, kept and maintained in sound repair and in good running order; that said box company and candy company, after taking possession of the separate portions of said premises, leased and occupied by them, respectively, were at all times thereafter, and upon and after May 22d, 1902, severally in the occupation, possession and control of said separate portions of said building leased to them respectively, and that when required for use by the box company, said elevator shaft and elevator were in the sole occupation, possession and control of the box company, and when required for use by the candy company, were in the sole occupation, possession and control of the candy company. Defendant, Woolson, further denies all of the allegations in said amended petition, charging him with carelessness or negligence in the construction of said building and elevator shaft, or otherwise, and in the construction, maintenance and operation of said elevator, or otherwise.

The defendant, the Monarch Candy Company, in its answer, alleges that for some time prior to and upon May 22d, 1902, the box company was the sole occupant of the entire fourth floor of said Berlin Block; and that at the time of the accident, whereby plaintiff was injured, said box company was in the sole possession, use and control of said elevator and said elevator shaft, and that at said time, said Henry K. Strayer was engaged only in the employ and business of said box company, and was in no wise engaged in the employ of the candy company; that at the time of said accident, the candy company was not in the possession, use and control of the fourth floor of said building, or said elevator shaft or of said elevator therein, and was not operating, and did not operate or in any wise control the operation of said premises or furnish power for or in any wise operate or control said elevator.

The candy company further alleges that at the time of said accident, the box company occupied said fourth floor and used said elevator shaft and elevator under an agreement with Wool-

son, as alleged in his answer, and that under the terms of the lease, whereby the candy company occupied its portion of said premises, it had no right whatever to use, operate or control said elevator shaft or said elevator whilst same was being used by said box company.

The candy company further alleges that said elevator shaft was suitably enclosed; the windows were provided with all proper and necessary sashes and appliances, etc., and that said elevator shaft was suitably and properly equipped for use and kept and maintained in sound repair and in good running order. All allegations in the amended petition charging the candy company with negligence, are denied.

The defendant, the Toledo Paper Box Company, in its answer, admits that on May 22, 1902, it was, and for some time prior thereto had been occupying the entire fourth floor of the Berlin Block; that on said day said elevator was operated and controlled by one Henry K. Strayer, who was employed solely by the candy company; that the candy company for a consideration paid to it by Woolson, raised and lowered the goods and wares of the other tenants of the building, except the box company, and that for a consideration paid directly to the candy company by the box company, the candy company agreed to raise and lower all the goods and wares of the box company to and from the fourth floor of said building, and that it was the duty of the candy company to raise all the goods and wares of the box company from the ground at the rear of the building and deliver them to the box company on the fourth floor of the building and to receive the goods and wares of the box company on the fourth floor of the building, and lower them to the ground in the rear thereof, and that while said goods and wares were being so raised or lowered, the box company had no control over them, and that the box company had no choice in the servants of the candy company, and had no right to control the servant of the candy company who operated said elevator, or any choice in the selection of said servant; but on the contrary, such servant was chosen, employed, directed and controlled solely by the candy company.

The box company further alleges that on May 22d, 1902, Henry K. Strayer was engaged in loading paper belonging to the box company upon a four wheeled truck, owned by it, and elevating said truck, when loaded to the fourth floor of the building, and delivering the paper from said truck to the box company at the fourth floor; that said Strayer, while so engaged, loaded said truck with paper and raised same to the fourth floor, when one of the wheels—it then proceeds to describe the circumstances of the accident about as described in the other pleading. And this answer also contains about the same allegations as are contained in the other pleadings as to the construction of the elevator shaft.

The box company, in its answer, further alleges that said elevator and elevator shaft were erected, constructed and maintained by Woolson; that at the fourth floor of said buiding said elevator floor is separated from the outer wall of said building by a space of about twelve inches, extending the entire length of said elevator, said space being the opening into which the wheel of the truck slipped; that Woolson had constructed between each floor of said build in said elevator shaft, a window to furnish light, the window at the fourth floor in said shaft being the window through which the bale of paper fell; that said elevator shaft and elevator had been constructed by Woolson long prior to the time when possession was taken of said fourth floor by the box company, and was in the same condition on May 22d, 1902, when the accident complained of occurred, as it was when possession was taken of said fourth floor by said box company; that said Woolson retained and exercised control over said elevator and elevator shaft, jointly with the candy company, and that the box company had no control over and was not responsible for the construction, maintenance or repair of said elevator and elevator shaft. All allegations in the amended petition, charging the box company with negligence, are denied.

So it will be seen, as stated by counsel upon the hearing, that this is a sort of triangular contest—I do not know but it has more sides than that. Now when the case came to be tried, there

was not much controversy or dispute about the circumstances of the accident. The dispute was largely respecting the rights and obligations of the defendants respectively, with respect to this elevator or elevator shaft. What they were claiming about that matter is well stated in the pleadings, of which I have read abstracts.

After the evidence was all in, the trial judge stated to the counsel and indicated his view of the matter, and advised them of what he would submit to the jury, and he charged the jury along lines indicated by his remarks, and, as his remarks happen to be in the record and state the matter very clearly, more comprehensively perhaps than the charge itself, I shall read some from them. His remarks were made in passing upon the various motions to direct verdicts: He says:

"I will say that in disposing of these motions I will not undertake to review the evidence nor discuss the various authorities that have been cited, but will simply state the conclusions at which I have arrived, so that counsel may know what matters are to be submitted to the jury. The questions are very important, and some of them new and difficult, and with the adverse and conflicting views that may be reasonably entertained upon these questions, I can not be expected to do much more than attempt to make a good guess, especially in the limited time at my command.

"First, as to the defendant Woolson; I am of the opinion on the undisputed facts that it was his duty to use reasonable care to keep the elevator and the shaft in a reasonably safe condition for use, and that the question to be submitted to the jury so far as he is concerned, is, whether at the time of the accident the elevator or the elevator shaft was in a defective condition such as is alleged, and whether such defective condition, if it existed, was due to any failure on his part to use reasonable care, and whether the defective condition of the elevator, if it existed, was the proximate cause of the injury. Now, he built the elevator shaft in the building, and put in a freight elevator for the use of all the tenants in the building who desired to use it. In leasing the various rooms in the building to his tenants he did not give to any tenant the exclusive right to the possession or use or control of the elevator. No tenant had such exclusive right. During the entire time Mr. Woolson was accustomed to make and did make all the repairs on the elevator and shaft that

were called for, or that seemed to be necessary, and up to January, or about January, 1900, he paid a part of the wages of the man who operated the elevator, and thereafter the part of the wages that he had been accustomed to pay was paid by the two tenants, and at the same time Mr. Woolson reduced the rent of the two tenants by the amount which he had been accustomed to pay theretofore as wages. I think that under all the facts and circumstances of the case which are undisputed, he was in such possession and control of the elevator as required him to use ordinary and reasonable care to keep it in a safe condition for use. I do not think this case is like the cases cited, such as *Burdick* v. *Cheadle,* and other cases, where the exclusive possession and control of the entire premises was given to the tenant; that is more like the common stairway and common passageway cases.

"As to the other charge of negligence, so far as Woolson is concerned, viz: the negligence of Strayer, I do not think on the undisputed facts, that while Mr. Strayer was engaged as he was at the time of the accident in hauling the goods of the box company, pertaining to the box company business. Strayer was the servant of Mr. Woolson, so that he can be held to be charged with Strayer's negligence, if there was any negligence upon his part. My conclusion on that feature is, to say to the jury that such negligence—negligence of Strayer—can not be imputed to or considered as against Woolson.

"So far as the defendant, the candy company, is concerned, I am of the opinion on the undisputed facts that the candy company is not liable upon either ground of negligence, and the jury will be directed to return a verdict in favor of the candy company.

"As to the defendant, the paper box company, I am of the opinion that Strayer at the time of the accident was its servant and was engaged in its business; that Strayer was under such control of the paper box company while attending to its work as to render the box company liable for any negligence upon the part of Strayer while doing that work. There is no evidence that he was under the control of any other party at that time, and impliedly while doing the work of the box company, he was subject to the orders, directions and control of the box company; and this seems to me is more clear, when it is considered that the plaintiff was on the premises upon the invitation of the box company. He was properly there attending to work for and in behalf of the box company; not as its agent, of course, but he was there upon the invitation of the box company. With-

out drawing any fine distinction as to what constitutes an agent or servant, Mr. Strayer was not a volunteer. He was elevating goods of the box company and for the box company. The box company owed some care to protect a person who was on its premises by its invitation; and if Strayer in moving these goods was negligent so far as the plaintiff was concerned, and that negligence resulted in the plaintiff's injury, it was the same as if the box company itself was negligent.

"As to the other ground of negligence, so far as the box company is concerned, as has been stated here by counsel, we are unable to separate one of these tenants from the other, and having held that the candy company is not liable upon that ground of negligence, I must hold the same as to the box company; in other words, that under the admitted facts and circumstances, so far as the condition of the elevator is concerned, Mr. Woolson is the only one to look to.

"The result of the whole thing is, that the questions to be submitted to the jury are solely these: First, whether Strayer was negligent in the respect alleged in loading this truck, or in hauling it off from the elevator, and whether such negligence was the proximate cause of the injury. If both of these propositions are established by a preponderance of the evidence, then I should say to the jury that the box company is liable. That is one question. The other question is, whether the elevator at the time of the accident, or the shaft, was in a defective condition. Of course that is not to be determined by the fact that an accident happened. The jury must find that it was in a defective condition and an unsafe condition. Second, whether the defective condition of the elevator was due to the negligence of Woolson or a failure on his part to use what under all the circumstances of the case, was ordinary and reasonable care. Third, whether such defective condition, if it existed, was the proximate cause of the injury. The case will present this feature: If the jury should find that Strayer was negligent, and that his negligence was the sole proximate cause of the injury, why then the box company alone would be liable; but if they find that Strayer was using care and that there was no negligence upon his part, the box company would not be liable. If they should find from the evidence in the case that Strayer was using due care and there was no negligence upon his part, and that the defective condition of the elevator was the proximate cause of the injury—if they find that Woolson was negligent— then he alone is liable; but if they find that the negligence of both directly and proximately caused the injury, then both the

box company and Woolson are liable, provided they find them to be negligent.''

Now we have read the evidence in this case very carefully, including the written evidence consisting of these leases made by Mr. Woolson to these various tenants, and the evidence respecting alleged oral modifications of these leases; and we conclude that the summing up by the trial judge in passing upon these motions correctly states the obligations of these parties and the issues to be submitted to the jury, i. e.:

First. That the candy company was not liable because of any responsibility for the condition of the elevator or the elevator openings at the fourth floor, and was not responsible for the conduct of Strayer, since he was not in its service, nor subject to its direction or control when taking the paper to the fourth floor for the box company; and the judgment of the court below as to the candy company will be affirmed.

Second. That Woolson was responsible for the condition of the elevator and the elevator shaft, but not for the conduct of Strayer, since he was not an employer of Strayer.

Third. That the box company was not responsible for the unsafe condition of the elevator shaft or elevator, due to defect in floor or failure to provide a safety guard for the window. But the box company was responsible for any negligence of Strayer in making use of the elevator under conditions and in a manner known to him to be unsafe and dangerous.

We come now to the consideration of the questions whether the verdict against Woolson is against the manifest weight of the evidence, and whether the verdict in favor of the box company is against the manifest weight of the evidence.

I should say that the evidence discloses that there was this space, not of eighteen inches, but of about twelve inches, I believe—I have not had an opportunity to verify these figures since it devolved upon me to deliver the opinion in this case, so I shall have to give them simply in a general way and rectify them afterwards, but I believe the space was about twelve inches between the floor of the elevator and the west side of the building at the fourth floor of the building, when the elevator was

elevated on the fourth floor; and it appears that because an accident had happened at this point, a boy having fallen and injured himself, immediately following that, that Mr. Woolson through his agent had gone there and rectified this defect and obviated this danger. This was done by putting a plank in to fill this space, and in putting in the plank, instead of placing it so it would be on a level with the fourth floor, and therefore level with the elevator when it was at the fourth floor, it was about four inches and a fraction, I believe, below that level. It also appears that the window at this fourth floor, like the windows at the other floor openings from the elevator shaft, at the rear of the building, was so placed that the sill was, I believe, something less than three feet above the fourth floor, and that this window had in it two sash, moveable sash; that each sash had four lights or panes of glass; that upon this occasion when Mr. Hessling came with this load of goods to the rear of the building, Mr. Strayer, who was in the employ and service of the box company, took the elevator to the lower floor, and with it a little cart or truck that has been mentioned; that he took this truck from the floor of the elevator out to the rear of the building and there loaded the paper upon it; that the paper was in bundles or packages, the size of these packages I am not able to state from memory, but I should think they were from twenty-four to twenty-eight inches square, perhaps a little longer one way than the other, and something like four or five inches thick and weighed about thirty-five pounds each, if my memory serves me right. He piled eleven of these packages upon the truck, perhaps the exact number of packages is not stated—he piled them up in one tier or one bundle upon the other, which made a pile about four or five feet high. He then brought the truck upon the floor of the elevator and that brought him to a position where the front of the truck and the tongue was toward the east and the rear of it was toward the west, so that when the elevator was brought up to the fourth floor, the rear of the truck was toward this window. It appears that on account of the size of the elevator floor, the limited area within which he had to operate and the way the tongue was constructed, that it

was necessary to back the truck toward the window in order to turn it and take it out of the side door to the fourth floor, the doors from the elevator at this floor being at the side of it.   In this operation the truck was backed toward the window, so that one of the wheels dropped down into this space where this offset of about four inches was; that this threw the truck out of perpendicular, and it dropped down on one side and elevated at the other, and the bundles of paper slipped off of the truck; they were higher up than the sill of the window, and some four, I believe, of the bundles went out of the window and down upon the drayman who was below, injuring him.

It is not claimed, nor does it appear that the plaintiff was guilty of any negligence in the premises.   It also appears that Mr. Strayer had been employed in operating this elevator for some time, and that he was well advised of all of the conditions; that in backing this truck with this load upon it, he appreciated the fact that the operation was dangerous.   He so says in his testimony, in fact.   It also appears that this operation might have been obviated, that is to say, there were many ways of elevating this paper to the fourth floor and unloading it there other than this dangerous way; that the truck might have been loaded at the lower floor, without being removed from it; it might have been placed also in a position so that it could have been backed or taken off at the upper floor without any turning, or, if taken out to be loaded, it might have been brought in and turned at the lower floor without any danger from the operation, or at the upper floor even, it could have been taken out as it was without turning.   There might have been measures taken in the blocking of the wheels or otherwise to prevent the wheel from dropping into this offset, or so many of the bundles as come up higher than the sill of the window might have been unloaded from the truck before the truck was moved, or the bundles might have been fastened in some way upon the truck; the truck might have been provided with some sort of a railing to prevent the bundles from dropping off, and, speaking of the circumstances as they were on that day, on that occasion, of the conduct of Mr. Strayer, I mention that he might have safely carried all these

bundles.  Another thing he might have very easily done, as appears to us, that would have been to have lowered this lower sash of the window to its place, so as to prevent this sliding of the bundles out of the window.  None of these things were done. The operation by Mr. Strayer was such as resulted in this calamity, and it is the only method that we can think of or conceive of that could have been pursued that would have resulted in this calamity, unless he had voluntarily thrown the bundles of paper out of the window.

Now is this verdict in favor of the box company against the weight of the evidence?  We think it is.  Strayer was the only active participant or agent in the causes leading to the result. If it can be said that Woolson may be held responsible, upon its being made to appear that he was guilty of negligence in leaving that offset in the floor and in leaving the window open, so that articles might fall out and upon persons beneath, this must be so upon the theory that a reasonably prudent and cautious man in his situation should have anticipated the happening of such an event, must have foreseen, at least, the likelihood of one using a truck similar to that used here, so constructed that the wheels might drop into this offset, and of one loading such truck with loose bundles of paper as these were loaded, and operating the same as this was operated, before such open window, while men were beneath where they might be injured by bundles falling out of the window and upon them.

If Mr. Woolson, who was not present at the time of the accident, and actually knew nothing of the way this truck was loaded and was handled before the open window, may be held responsible on the ground that a reasonably prudent person exercising ordinary care should have anticipated all these circumstances in the chain of causation, what shall be said of Strayer, who not only knew of the offset in the floor and the open window, but actually loaded the truck and moved it in the manner that produced the result, and that in the face of this danger, and, apparently with some actual appreciation, as well as presumed knowledge thereof, when he might have refrained from such action and might have pursued a course or several courses open

to him that would have obviated the danger.    We can not under-
stand how it can be said, logically and fairly, that because of
his passive negligence in permitting a dangerous condition to
continue, and his presumed anticipation of this concatenation of
circumstances and the result, the like of which might not happen
again in a millenium, Woolson should be deemed guilty of negli-
gence in law, while Strayer, knowing all that Woolson knew,
and all that Woolson may be presumed to have known, and be-
sides being the active, independent human agent, who, of his
own volition put these potentialities in motion, and thereby
made them a part of a chain of actual causes and agencies re-
sulting in this injury, may be said to be innocent of any fault or
negligence in the premises.

That Strayer was acquainted with all the surroundings and
conditions, and that he regarded the situation as dangerous when
he came to try to take the truck from the elevator appears from
his own testimony:    Passing by the question whether he negli-
gently loaded the truck, though he might have put or turned the
truck upon the platform at the lower floor and so avoided the
accident; though he might have placed some hindrance to the
wheel leaving the elevator platform and so avoided the accident;
though he might have taken a few of the bundles from the truck
before he attempted to turn it and so avoided the accident;
though he might have closed the window and thereby in all
human probability avoided the accident, he voluntarily chose the
only course that can be conceived of under the circumstances,
that would produce the accident, and the accident happened,
and yet the jury said he was not guilty of negligence that was a
proximate cause of the injury.    This verdict is, we think, mani-
festly and clearly against the weight of the evidence.

As to the verdict against Woolson.    Is it against the weight
of the evidence?    As I have indicated, we regard the happening
of this accident as one scarcely to be anticipated by one not on
the ground to observe the conduct of Strayer in loading and man-
aging the truck.    And yet we are not prepared to say that a
jury may not justly and properly hold Woolson also responsible
for the result.    But we are of the opinion that his legal re-

sponsibility does not fairly appear from this record. Let it be granted that the way the floor was left amounted to negligence, and that the way the windows were left open and unguarded at the time of the accident under the circumstances amounted to negligence, and that, knowing of this condition, of the offset in the floor and on open unguarded window, he may be held to be bound to anticipate the other conditions, due to the character of the· truck and the manner of its use on this occasion, and still his legal responsibility does not follow.

It is to be observed that to produce the result here it was necessary not only that the jog in the floor should be present to permit the wheel to drop and the cart and load to tip so that part of the load might slide off, but it was necessary that there should be nothing in the way to prevent the load from going out of the window. Both causes or circumstances concurred and were essential to the result. If the floor had been without the offset, it is not likely that one would move the truck so negligently as to throw the load out of the window, though he might have done so. On the other hand, had the window opening been in condition to prevent the load from going out of the window, no harm would have resulted from the offset in the floor and the consequent sliding of the load from the truck. Now the evidence discloses that while it devolved upon Woolson to keep the elevator in repair so as to make it reasonably safe for use (safe to the tenant and his servants and customers and one lawfully and properly there as was the plaintiff in this case), the elevator and the openings to the shaft were under the control of the tenants, and the window to the shaft at the fourth floor seems to have been under the control of the box company. It also appears that this window (like the others) was provided with two moveable sash, one above the other (the usual form of construction) and that in each sash were four panes of glass, each about 12 or 14 inches wide by 18 inches high, there being two panes at the bottom of each sash and two more immediately above; also, that these sash moved with cords, weights and rollers, so that they might be readily moved up and down. It also appears that the window (like the others) was provided with solid plank

swinging doors, opening outward and meeting at the center of the opening. It does not appear that these doors could not be closed and fastened, nor that any glass were absent from these sash. It is apparent that with the doors closed or with the lower sash down in place, this paper could not have slid from the window. The parcels were too large to go out through the sash, unless both glass and the wooden part of the sash between them should be broken. It is not made to appear that the lower sash, if down, would not have prevented this accident. As the paper could not have gained much momentum before striking it, unless it was in a very frail condition, the sash must have presented an effective barrier to its further progress.

It is charged that Woolson did not furnish bars or other guards or barriers at this window opening. The burden of proving this rested upon the plaintiff. We think that he has failed to establish this by the evidence, and that therefore the verdict, as to Woolson, is manifestly against the weight of the evidence. Woolson was not an insurer of the safety of one in the situation or sustaining the relation of the plaintiff, toward him? And for his safety, Woolson was bound to do no more than exercise ordinary care. It does not appear that he had not done so in making the provisions mentioned for the closing of the openings of the windows. He was not bound to anticipate that the tenants would not make use of these appliances or avail themselves of these provisions, but would, under circumstances where it would be dangerous and negligent to do so, remove the barriers provided.

The opening was needed for light and air. Mr. Woolson might have anticipated that in the ordinary use of the elevator, the plank door would be opened to let in light and air, and that to let in air the lower sash would be lifted or the upper one lowered. But if the tenant should be using the elevator in a manner that would make it obviously unsafe to raise the lower sash, we do not think it reasonable to say that Woolson should have anticipated or was bound to forsee that the lower sash would be raised, especially in view of the fact that the same light and air would

be secured by lowering the upper sash instead.   We think that to require Woolson to stand by on guard to prevent such operation, or require him to fasten the lower sash so that it could not be raised at all, though generally it might be quite safe and more convenient to have it raised, would require of him too high a degree of care, would amount practically to making him an insurer against such accidents.

In this connection, I desire to call attention to one or two paragraphs in the charge of the trial judge, which, under the circumstances, may perhaps have a tendency to mislead the jury somewhat; for we think that these provisions having been made for the closing of the window, the negligence of Strayer consisted not only in his movement of the truck and in his failure to lower the sash or take other measures to prevent the paper from falling out of the window; and in charging the jury, the language of the court is open to the construction that Strayer might have allowed the window to remain precisely as he found it when he brought the paper to the upper floor, and that he would not be guilty of negligence in so doing, no matter what provision might be made, by not closing the window, provided that the elevator was in a defective condition.   So far as it is open to this construction, we think that the charge is wrong.   I read at page 110:

"The result of the whole thing is, that the questions to be submitted to the jury are solely these:   First, whether Strayer was negligent in the respect alleged in loading this truck, or in hauling it off from the elevator, and whether such negligence was the proximate cause of the injury.   If both of these propositions are established by a preponderance of the evidence, then I should say to the jury that the box company is liable. That is one question.   The other question is, whether the elevator at the time of the accident, or the shaft, was in a defective condition."

Fairly interpreted we think this language is open to the construction that the failure to close the window was part of the operation by Mr. Strayer, on account of which he might be

chargeable with negligence. The other part of the charge I call attention to was excepted to specifically on behalf of Woolson. I have already undertaken to point out that it was necessary in order to make Mr. Woolson legally responsible here that he should have been negligent in both respects charged. That is to say, in leaving the jog in the floor of the platform, and also in not providing for the opening at the window, so that things might not fall out; and in one paragraph, at least, of the charge it seems to be stated, indeed it is stated distinctly that if he was negligent in *either* respect, he was legally responsible. I read that part of the charge:

"Next as to the defendant Woolson: In order to entitle the plaintiff to recover of the defendant, Woolson, it is incumbent upon him to show by a preponderance of the evidence, first, that the elevator or the elevator shaft was in a defective or unsafe condition by reason of the opening or depression adjacent to the elevator platform when it was at the fourth floor, not being sufficiently covered or guarded, or by reason of there being no bars or other obstructions across the window, *either* or both."

Making him responsible on account of negligence in either respect; making him responsible, though the jury may have found that he had exercised due care in providing barriers for the windows so that goods might not fall out; though they might have found that the barriers provided were entirely adequate; that he was not negligent in that respect, yet the court says, if he was negligent in the other respect, he is liable; and that part of the charge we think is erroneous. It must appear not only that Woolson was negligent, but that his act of negligence was the proximate cause, or a proximate cause of the injury. The law does not impute negligence to one for his act resulting in an injury which would not have happened but for the interposition of a new and independent cause which was not to be reasonably anticipated, and when the new and independent cause consists in a voluntary and negligent act of another person, that such negligence is to be anticipated is not ordinarily a reasonable conclusion; for it is usually more reasonable to anticipate ordinary care, at least, in the conduct of sane adults.

Even if it may be permissible to conclude that Woolson should have anticipated all the other acts, negligent and otherwise, in this peculiar chain of causation, it does not appear that he should have reasonably anticipated the disuse and practically the removal of all provisions that may have prevented this accident, if the box company had exercised ordinary care in making use thereof.

It may be that on a new trial it can be shown that the sash could not be made a barrier to the falling of this paper, or that Woolson was aware that such barrier was habitually removed under circumstances making its removal dangerous and likely to result in such accident; or some other face may be put upon the matter from which it may be made to appear that he should be held responsible for this accident. Therefore we do not dismiss the case as to him; but we reverse it as to him and as to the box company; and affirm it as to the candy company.